05-5739-cr
United States v. Regalado

**UNITED STATES COURT OF APPEALS**

**FOR THE SECOND CIRCUIT**

August Term, 2007

(Argued: December 11, 2007          Decided: March 4, 2008

Amended: May 9, 2008)

Docket No. 05-5739-cr

- - - - - - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA,

      Appellee,

      -v.-

JOSE REGALADO,

      Defendant-Appellant.

- - - - - - - - - - - - - - - - - - - -X

Before:          JACOBS, Chief Judge, POOLER and SACK,
                 Circuit Judges.


Appeal from the sentence of the United States District

Court for the Southern District of New York (Leisure, J.),

following defendant's guilty plea to conspiring to

distribute and possess with intent to distribute cocaine

base.  In light of Kimbrough v. United States, --- U.S. ---,

128 S. Ct. 558 (2007), we are unable to discern whether the

district court would have imposed a non-Guidelines sentence had it been aware that "the cocaine Guidelines, like all other Guidelines, are advisory only," and that it therefore had discretion to deviate from the Guidelines where necessary to serve the objectives of sentencing under 18 U.S.C. § 3553(a).  Id. at 564, 575.  Without that information, we cannot say whether there was plain error. Accordingly, the case is remanded for further proceedings consistent with this opinion.

B. Alan Seidler, New York, NY, for Defendant-Appellant.

Stephen A. Miller, Assistant United States Attorney (Michael J. Garcia, United States Attorney, Southern District of New York, on the brief, Daniel A. Braun, Assistant United States Attorney, of counsel), United States Attorney's Office for the Southern District of New York, New York, NY, for Appellee.

PER CURIAM[1]

Jose Regalado appeals from the sentence of 262 months' imprisonment imposed by the United States District Court for

---

[1]After due consideration of the government's petition for rehearing, which is denied, we have sua sponte amended our opinion.

the Southern District of New York (Leisure, J.), following his May 1, 2003 guilty plea to conspiring to distribute and possess with intent to distribute cocaine base.  In light of Kimbrough v. United States, --- U.S. ---, 128 S. Ct. 558 (2007), we are unable to discern whether the district court would have imposed a non-Guidelines sentence had it been aware that "the cocaine Guidelines, like all other Guidelines, are advisory only," and that it therefore had discretion to deviate from the Guidelines where necessary to serve the objectives of sentencing under 18 U.S.C. § 3553(a).  Id. at 564, 575.  We remand the case to the district court for further proceedings necessary to determine whether resentencing is required.[2]

## BACKGROUND

Regalado pleaded guilty to conspiring to distribute and possess with intent to distribute cocaine base in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A).  At sentencing, the district court determined that Regalado distributed more than 1.5 kilograms of cocaine base, which resulted in a base

---

[2]Prior to filing, this opinion has been circulated to all members of this Court.  See, e.g., United States v. Crosby, 397 F.3d 103, 105 n.1 (2d Cir. 2005).

offense level of 38. See U.S.S.G. § 2D1.1(c)(1) (2004). After a four-level enhancement for Regalado's leadership role, see § 3B1.1(a), and a three-level reduction for acceptance of responsibility, see § 3E1.1(a) and (b), the resulting sentencing range (at criminal history category I) was 262-327 months. Regalado unsuccessfully sought a downward departure based on extraordinary family circumstances. However, he did not ask the district court to deviate from the Guidelines on the ground that the base offense levels for crack cocaine fail to serve the objectives of sentencing under § 3553(a). Judge Leisure sentenced Regalado principally to a term of 262 months' imprisonment, the bottom of the Guidelines range.

Regalado appealed, and we remanded the case for further proceedings pursuant to United States v. Crosby, 397 F.3d 103 (2d Cir. 2005). On remand, the government argued that the original Guidelines sentence was reasonable and should not be disturbed. Regalado's Crosby submission requested leniency, but made no argument bearing on the district court's discretion to deviate from the sentencing ranges for crack cocaine offenses. The district court reviewed its original Guidelines calculation, gave renewed consideration

to the 18 U.S.C. § 3553(a) factors, and discussed and responded to the parties' Crosby submissions.  It then concluded that it would not have imposed a non-trivially different sentence had the Guidelines been advisory rather than mandatory.  It therefore declined to resentence Regalado, and this appeal followed.

**DISCUSSION**

**I**

The Guidelines' drug quantity table sets base offense levels for crack and powder cocaine offenses.  See U.S.S.G § 2D1.1.  In Kimbrough v. United States, --- U.S. ----, 128 S. Ct. 558 (2007), the Supreme Court held that "the cocaine Guidelines, like all other Guidelines, are advisory only."  Id. at 564.  Although a sentencing judge must "give respectful consideration to the Guidelines" among "the array of factors warranting consideration," the judge also has discretion to determine that "in the particular case, a within-Guidelines sentence is 'greater than necessary' to serve the objectives of sentencing."  Id. at 564, 570 (citing 18 U.S.C. § 3553(a)).  "In making that determination, the judge may consider the disparity between

5

the Guidelines' treatment of crack and powder cocaine offenses," so long as the court does not "purport to establish a ratio of its own." Kimbrough, 128 S. Ct. at 564, 575. Kimbrough thus emphasized the broad discretion of a district court "'to tailor [a] sentence in light of other statutory concerns.'" Id. at 570 (quoting United States v. Booker, 543 U.S. 220, 245-46 (2005)).

In our review, we owe deference to that discretion. Kimbrough, 128 S. Ct. at 576 ("The ultimate question in Kimbrough's case is . . . 'whether the District Judge abused his discretion in determining that the § 3553(a) factors supported a sentence of [15 years] and justified a substantial deviation from the Guidelines range.'") (quoting Gall v. United States, --- U.S. ----, 128 S. Ct. 586, 600 (2007) (alteration in original)). As the Supreme Court recently explained in Gall v. United States, "the appellate court must review the sentence under an abuse-of-discretion standard." 128 S. Ct. at 597. First, we "ensure that the district court committed no significant procedural error," such as "treating the Guidelines as mandatory . . . ." Id. Next, we review the substantive reasonableness of the sentence for abuse of discretion. Id. Such review should

"take into account the totality of the circumstances, including the extent of any variance from the Guidelines range. . . . It may consider the extent of the deviation, but must give due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance." Id. Furthermore, we may not reverse the district court simply because we would have imposed a different sentence. Id.

This guidance and direction from the Supreme Court confirms the broad deference that this Circuit has afforded the sentencing discretion of the district courts. See, e.g., United States v. Fernandez, 443 F.3d 19, 27 (2d Cir. 2006); United States v. Crosby, 397 F.3d 103, 112-14 (2d Cir. 2005); United States v. Fleming, 397 F.3d 95, 100 (2d Cir. 2005). However, until Kimbrough and Gall, this Circuit tended to discourage district courts from deviating from the crack cocaine Guidelines. Our opinion in United States v. Castillo, 460 F.3d 337 (2d Cir. 2006), may have been over-read or misread to inhibit any deviation. District courts may also have been inhibited from exercising their full discretion by the fact that the Sentencing Commission borrowed the 100-to-1 Guidelines ratio from the mandatory

7

minimums for drug offenses decreed by Congress.  Id. at 567 (explaining origin of Guidelines crack to powder ratio). Therefore, when a district court sentenced a defendant for a crack cocaine offense before Kimbrough, there was an unacceptable likelihood of error; certainly, the court acted under the influence of a widespread assumption that is now known to be erroneous.  Where the defendant failed to argue for such a deviation from the Guidelines range before the sentencing court, it is impossible to know, ex post, whether the court would have exercised its discretion to mitigate the sentencing range produced by the 100-to-1 disparity.

In this situation, we review for plain error.  "To demonstrate plain error, a defendant must show (1) error, (2) that is plain at the time of appellate review, and (3) that affects substantial rights.  Where these conditions are met, we have the discretion to notice a forfeited error if (4) it seriously affects the fairness, integrity, or public reputation of judicial proceedings."  United States v. Quinones, 511 F.3d 289, 316 (2d Cir. 2007) (citing United States v. Olano, 507 U.S. 725, 732 (1993); United States v. Rybicki, 354 F.3d 124, 129 (2d Cir. 2003) (en banc); United States v. Thomas, 274 F.3d 655, 667 (2d Cir. 2001) (en

8

banc)). Since the district court was, quite understandably, unaware of (or at least insecure as to) its discretion to consider that the 100-to-1 ratio might result in a sentence greater than necessary, there was an unacceptable likelihood of error. While the risk of such error in crack sentences imposed between Booker and Castillo is not so high as to invariably satisfy the first step of plain error analysis, it is sufficiently real to merit identification in individual cases. As we have held, "in the sentencing context there are circumstances that permit us to relax the otherwise rigorous standards of plain error review to correct sentencing errors." United States v. Sofsky, 287 F.3d 122, 125 (2d Cir. 2002). Such relaxation is appropriate here because a sizable portion of post-Booker, pre-Castillo cases where error is identified will also satisfy the third and fourth plain error factors given the judiciary's long-standing concerns about the severity of the crack Guidelines. See, e.g., United States v. Moore, 54 F.3d 92, 99, 102 (2d Cir. 1995) (rejecting equal protection challenge to crack Guidelines but commenting that "[t]he statistical evidence of disparate impact and several questionable passages in the legislative record are

9

discomfiting" and that "Moore's arguments raise troublesome questions about the fairness of the crack cocaine sentencing policy"); United States v. Singleterry, 29 F.3d 733, 741 (1st Cir. 1994) ("Although Singleterry has not established a constitutional violation, he has raised important questions about the efficacy and fairness of our current sentencing policies for offenses involving cocaine substances."). The unusual circumstances surrounding application of the crack Guidelines in the Circuit after Booker and before Castillo justify a narrow and limited exception to our general rule that sentencing courts are presumed to know and follow the applicable sentencing law. See United States v. Fernandez, 443 F.3d 19, 30 (2d Cir. 2006); United States v. Gonzalez, 281 F.3d 38, 42 (2d Cir. 2002).

If the district court did not fully appreciate the extent of its discretion to deviate from the crack Guidelines range prior to Kimbrough, there was an error. After Kimbrough, such error would be plain. The remaining questions are whether the likely error affects substantial rights and whether the error seriously affects the fairness, integrity or public reputation of judicial proceedings. We cannot address those issues on the present record.

10

**II**

In United States v. Crosby we confronted an analogous situation. There, the likely error was that prior to United States v. Booker, 543 U.S. 220 (2005), a district court understood the Guidelines to be mandatory. See Crosby, 397 F.3d at 115-16. However, the defendant failed to object to the mandatory application of the Guidelines below, and so we reviewed for plain error. Id. at 116. We assumed that the district court was influenced by the widespread assumption that the Guidelines were mandatory, which was error, and we saw after Booker that the error was plain. However, we could not tell whether the error affected a substantial right because we could not tell on appeal whether the district court would have imposed a non-trivially different sentence had it recognized that the Guidelines were advisory. Accordingly, we ruled that "pre-Booker/Fanfan sentences pending on direct review [require] remand to the district court, not for the purpose of a required resentencing, but only for the more limited purpose of permitting the sentencing judge to determine whether to resentence, now fully informed of the new sentencing regime." Id. at 117 (emphasis in original). Thus, on a

*Crosby* remand, the district court must indicate whether, at the time of the original sentence, it would have imposed a non-trivially different sentence under advisory Guidelines. *Id.* at 118. If so, vacatur and resentencing is required. *Id.* at 120. If not, the district court must "place on the record a decision not to resentence, with an appropriate explanation," *id.*, and we will then review the sentence for reasonableness. *United States v. Williams*, 475 F.3d 468, 474 (2d Cir. 2007).

Similarly, when the sentencing of a defendant for a crack cocaine offense occurred before *Kimbrough*, we cannot tell whether the district court would have exercised its now clear discretion to mitigate the sentencing range produced by the 100-to-1 ratio. If it would have, an affirmance of the original sentence would "seriously affect[] the fairness, integrity, or public reputation of judicial proceedings," *Quinones*, 511 F.3d at 316, because imposition of a sentence that the district court would not have imposed had it fully appreciated the extent of its discretion would, in our view, "seriously undermine the public's confidence in the judicial process." *United States v. Keigue*, 318 F.3d 437, 445 (2d Cir. 2003) (discussing district court's

12

erroneous use of expired version of the Guidelines). "This is especially true given the relative ease of correcting the sentencing error on remand, thus accentuating the potential unfairness of allowing the district court's error to stand." United States v. Gordon, 291 F.3d 181, 195 (2d Cir. 2002).

We therefore adopt the Crosby mechanism and apply it here. Where a defendant has not preserved the argument that the sentencing range for the crack cocaine offense fails to serve the objectives of sentencing under § 3553(a), we will remand to give the district court an opportunity to indicate whether it would have imposed a non-Guidelines sentence knowing that it had discretion to deviate from the Guidelines to serve those objectives. If so, the court should vacate the original sentence and resentence the defendant. If not, the court should state on the record that it is declining to resentence, and it should provide an appropriate explanation for this decision. On appeal, if we have not already done so, we will review the sentence for reasonableness.

Crosby recognized that a resentencing might yield a higher sentence. That is a remote and (at most) rare prospect on a remand under Kimbrough. Nevertheless, (as in

13

<u>Crosby</u>) the "remand, on a defendant's appeal, that authorizes a district judge to consider whether to resentence and that permits resentencing should include an opportunity for a defendant to avoid resentencing by promptly notifying the district judge that resentencing will not be sought." <u>Crosby</u>, 397 F.3d at 118. Likewise, we "intimate no view at this time as to whether the Ex Post Facto Clause would prohibit a court from imposing a more severe sentence than a defendant would have received had the [cocaine] Guidelines [been considered] mandatory." <u>Id.</u> at 117 n.17 (<u>citing</u> <u>United States v. Broderson</u>, 67 F.3d 452, 456 (2d Cir. 1995)).

**III**

Regalado's brief on appeal, filed pre-<u>Kimbrough</u>, does not contest the 100-to-1 ratio. (The arguments Regalado did raise on appeal would ordinarily have been considered and decided in a summary order, on the grounds set forth in the margin.[3]) Because Regalado does not raise this argument on

---

[3]Regalado argues that his sentence was substantively unreasonable, but we owe deference to the district court's evaluation of his personal circumstances, <u>United States v. Gallante</u>, 111 F.3d 1029, 1034 (2d Cir. 1997), and cannot conclude that his sentence "exceed[s] the bounds of

appeal, we would ordinarily treat it as forfeited. United States v. Pereira, 465 F.3d 515, 520 n.5 (2d Cir. 2006). We are not required to do so, however. Sniado v. Bank Austria AG, 378 F.3d 210, 213 (2d Cir. 2004). On the circumstances presented by this appeal, we think it the better course to consider the argument.

We cannot know whether the district court would have imposed a non-Guidelines sentence had it been aware (or fully aware) of its discretion to deviate from the crack

allowable discretion." United States v. Fernandez, 443 F.3d 19, 27 (2d Cir. 2006) (citation and internal quotation marks omitted). We also reject Regalado's Sixth Amendment claim that his offense level was calculated based on a drug quantity determined by the district court because during his plea allocution he admitted to distributing more than 1.5 kilograms of crack cocaine, more than the 50 grams necessary to trigger a ten-year mandatory minimum sentence under 21 U.S.C. § 841(b)(1)(A). In addition, Regalado's (unpreserved) due process challenge to the 100-to-1 powder to crack cocaine ratio underlying his sentence is without merit as we have repeatedly rejected similar constitutional challenges. See, e.g., United States v. Stevens, 19 F.3d 93, 97 (2d Cir. 1994). As for Regalado's ineffective assistance of counsel claim, he argues only that his trial attorney failed to raise the above constitutional challenges to his sentence, but "[f]ailure to make a meritless argument does not amount to ineffective assistance." United States v. Arena, 180 F.3d 380, 396 (2d Cir. 1999). It is therefore "beyond any doubt" that his attorney's assistance was not ineffective. United States v. Matos, 905 F.2d 30, 32 (2d Cir. 1990).

15

cocaine ranges in light of the objectives of sentencing.[4]
Because we are unable to tell whether the likely procedural
error (i.e., unawareness of discretion to consider that the
100-to-1 ratio may cause a particular sentence to be
excessive) affected substantial rights and affected the
fairness, integrity or public reputation of judicial
proceedings, we must remand.[5]

**IV**

After additional research and experience with the
Guidelines, the Sentencing Commission concluded that the

---

[4]This appeal presents an additional wrinkle because on a Crosby remand--where the issue is whether the sentencing judge would have imposed a non-trivially different sentence had it anticipated Booker--there would have been no occasion for the Court to consider the harshness of the 100-to-1 ratio. Even if the court did consider this issue, it would not have had to say so explicitly. However, where, as here, a district court declines to resentence on a Crosby remand, we still review the underlying sentence for reasonableness. United States v. Williams, 475 F.3d 468, 474 (2d Cir. 2007). Therefore, we must assess whether the original sentencing was infected by procedural error. Id.

[5]Should Regalado appeal from the district court's decision on remand, "the law of the case doctrine ordinarily will bar [him] from renewing challenges to rulings made by the sentencing court that were adjudicated by this Court--or that could have been adjudicated by us had [Regalado] made them--during the initial appeal" that led to a remand. Williams, 475 F.3d at 475.

16

100-to-1 powder to crack ratio fails to meet the objectives of sentencing because it rests on unsupported assumptions about the relative harmfulness of the drugs, it punishes "retail" crack dealers more harshly than "wholesale" drug distributors, and it promotes an unwarranted disparity based on race.  Kimbrough, 128 S. Ct. at 568 (citing United States Sentencing Commission, Report to Congress: Cocaine and Federal Sentencing Policy 91-103 (May 2002)).  Repeated efforts by the Commission to reduce the crack to powder ratio beginning in 1995 failed to induce congressional action.  Kimbrough, 128 S. Ct. at 569.

However, the Commission recently reduced the base offense level associated with each quantity of crack by two levels, effective November 1, 2007.  See U.S.S.G. § 2D1.1 (2007); Amendments to the Sentencing Guidelines for United States Courts, 72 Fed. Reg. 28571-28572 (2007).  That change has been given retroactive effect because the Sentencing Commission added this amendment to those listed at U.S.S.G. § 1B1.10(c).  See United States v. Garcia, 339 F.3d 116, 120 (2d Cir. 2003).  Therefore, the district courts now have jurisdiction pursuant to 18 U.S.C. § 3582(c)(2) to decide in the first instance whether to modify previously-imposed

17

sentences where the cocaine ranges on which they were based have subsequently been lowered.  To invoke the district courts' jurisdiction, defendants should move for modification of their sentences pursuant to 18 U.S.C. § 3582(c)(2) in the district courts.  (Assistance under the Criminal Justice Act can be expected to be available for such motions.)  In deciding whether to modify the sentence, district courts must consider the factors set forth in 18 U.S.C. § 3553(a) anew and in light of <u>Gall</u> and <u>Kimbrough</u> to the extent that they may be applicable, and relevant Sentencing Commission policy statements.  <u>See</u> 18 U.S.C. § 3582(c)(2).

In considering the present appeal, we recognize that whether we remand now or consign Regalado to seeking relief by motion, the ultimate result may well be the same.  There are certain factual equivalencies between deciding whether one would have imposed a non-Guidelines sentence with broader discretion to deviate from the Guidelines, and arriving at a different sentence by a different Guidelines computation entirely (which might obviate the need to exercise that discretion).  At the same time, it makes little sense to allow a judgment to become final even though

the district court would not have imposed it in light of its now better defined powers so that the same essential question can be presented by motion.  Therefore, the best course is to remand to the district court.

## CONCLUSION

The case is remanded for further proceedings consistent with this opinion.